John W. Lerew and Elizabeth Lerew v. Commissioner.
Lerew v. Commissioner
Docket No. 76891.
United States Tax Court
T.C. Memo 1962-139; 1962 Tax Ct. Memo LEXIS 169; 21 T.C.M. (CCH) 732; T.C.M. (RIA) 62139; June 7, 1962
Jules E. Yarnell, Esq., for the petitioners. Eugene L. Wilpon, Esq., and Clarence P. Brazill, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent has determined deficiencies in income tax and additions to tax as follows: Additions to Tax - I.R.C. 1939
Year
Tax
Sec. 294(d)(1)(A)
Sec. 293(b)
Sec. 294(d)(2)
1949
$8,735.10
$ 742.49
$4,367.55
$524.11
1950
3,479.66
486.23
1,739.83
1951
8,582.08
1,035.37
4,291.04 Respondent concedes error with respect to the addition to tax under section 294(d)(2) of the 1939 Code. The issues remaining for determination are: (1) Whether respondent correctly determined that specific bank *170 deposits in 1949, 1950, and 1951 reflected the receipt of unreported income in those years; (2) whether any part of any deficiency is due to fraud with intent to evade tax; (3) whether petitioner is liable for additions to tax under section 294(d)(1)(A); and (4) whether petitioner is entitled to a refund as a result of an overpayment of income taxes in the years in issue. Findings of Fact The stipulated facts are hereby found accordingly. John W. Lerew (hereinafter called petitioner) and Elizabeth Lerew (hereinafter called wife) are husband and wife and reside at 180 Victory Boulevard, New Rochelle, New York. Their joint tax returns for the years 1949, 1950, and 1951 were filed with the collector of internal revenue for the fourteenth district at Albany, New York. Petitioner was born on July 15, 1891 and graduated from Lebanon Valley College in 1915 and the Harvard Graduate School of Business in 1917. Petitioner's grandfather was a farmer who had founded a bank, Joseph Lerew & Co., in East Berlin, Pennsylvania. During an agricultural depression in the years 1894 to 1897, this bank failed and was taken over by creditors. Petitioner's father was one of the founding directors *171 of the Citizens Trust Company, a bank in Gettysburg, Pennsylvania. Petitioner and his wife were married in 1920 and have three children, Caroline, John W., Jr. (hereinafter called Jr.) and Ann. After graduating from Harvard, petitioner held various executive positions with the following organizations: United States Navy (commissioned officer from 1917 through 1924); R. Hoe & Co.; Wood Newspaper Machinery Company; Baldwin Locomotive Works; Standard Air Conditioning; Machine Tool Division of the British Purchasing Commission; and Eastern Machinery Company. In 1944 petitioner formed a family partnership known as J. W. Lerew & Co. Petitioner made a practice of keeping large amounts of cash in his home. Petitioner has constantly maintained bank accounts since his days in college and has borrowed money during this period. In 1947 petitioner was suffering from a bone cancer in his shoulder which forced him to retire from work in 1948. On June 1, 1950, petitioner had an operation to relieve this condition. During 1949, 1950, and 1951, petitioner had income from the family partnership and from investments in securities and interest income from mortgages, wa bonds, and bank deposits. *172 After a meeting with Charles Schwab, president of Bethlehem Steel, in 1911, petitioner became interested in buying stock in the company. Three years later, in the fall of 1914, when money became available to him through part-time employment and inheritance, he purchased between $3,000 and $4,000 worth of the stock. At that time, the price of the stock was under $30 a share. By 1916, the stock was selling for more than $600 a share and petitioner sold the stock, realizing in excess of $100,000. Petitioner reported his gain as income in that year. Petitioner kept this cash in a specially constructed strongbox in his home. When petitioner became ill and was no longer physically able to work, he decided that it was time to start drawing on this cash fund. Petitioner and his wife, in their individual names or in the names of their children, made deposits in several accounts on the dates and in the amounts stated in the following schedule: Amount of Deposit
Account
Date of Deposit
1949
1950
1951
Brokerage accounts
Francis I. DuPont & Co.
Apr. 27, 1949
$ 9,900.00
July 12, 1949
1,844.13
Bache & Co.
July 12, 1949
5,000.00
Oct. 25, 1949
3,500.00
Delafield & Delafield
Feb. 17, 1950
$3,200.00
Delafield & Delafield (Acct. of Jr.)
Feb. 17, 1950
1,828.00
Delafield & Delafield (Acct. of Ann)
Dec. 26, 1951
$ 8,512.00
Auerbach, Pollak & Pichardson
Oct. 29, 1951
2,200.00
Dec. 31, 1951
650.00
Savings accounts
Bowery Savings Bank
Acct. No. 419269
Jan. 20, 1949
3,000.00
Seamen's Bank for Savings
Acct. No. 790188 (Trust acct. for Jr.)
Feb. 8, 1949
2,340.91
Seamen's Bank for Savings
Acct. No. 790189 (Trust acct. for Caro-
line)
Feb. 8, 1949
2,659.09
Checking account
First National Bank of New Rochelle
June 23, 1949
2,800.00
Feb. 27, 1950
500.00
May 1, 1950
400.50
July 5, 1950
950.00
July 5, 1950
500.00
Aug. - 1950
100.00
Sept. 20, 1950
245.00
Oct. 11, 1950
100.00
Dec. 1, 1950
1,000.00
Jan. 11, 1951
1,660.00
Jan. 11, 1951
175.00
Jan. 26, 1951
500.00
Jan. 26, 1951
503.25
Apr. 6, 1951
444.00
Apr. 30, 1951
248.19
June 26, 1951
200.00
Sept. 19, 1951
800.00
Oct. 30, 1951
800.00
Dec. 21, 1951
517.18
Dec. 31, 1951
470.00
Total yearly cash deposits
$31,044.13
$8,823.50
$17,679.62
*173 The sources of each of these deposits were as follows: F. I. DuPont & Co.
4/29/49
$9,900.00
7/11/49
1,844.13
From cash held in home. Bache & Co.
7/12/49
$5,000.00
Following checks drawn on J. W. Lerew & Co. account in the Central Hanover Bank and Trust Co.: Number
Date
Amount
245
3/ 8/46
$2,000.00
554
4/16/47
1,000.00
580
7/15/47
1,000.00
703
12/13/48
2,500.00
$6,500.00
Bache & Co.
10/25/49
$3,500.00
Following withdrawals from Seamen's Bank for Savings: Account No.
Date
Amount
790188
10/24/49
$2,000.00
790189
10/24/49
2,000.00
$4,000.00
Delafield & Delafield
2/17/50
$3,200.00
From cash held in home. Delafield & Delafield
Account of Jr.
2/17/50
$1,828.00
Withdrawal from Bowery Savings Bank, Account No. 600644, in the amount of $1,867.22 on 1/16/50. Delafield & Delafield
Account of Ann
12/26/51
$8,512.00
Cash held at home in the amount of $1,512.00 plus the following withdrawals from the joint account of petitioner and wife in the First National Bank of New Rochelle: Date
Amount
1/30/45
$2,000.00
10/16/45
3,000.00
7/31/47
2,000.00
$7,000.00
Auerbach, Pollak & Richardson
10/29/51
$2,200.00
*174 Withdrawal from petitioner's account with Francis I. DuPont & Co. in the amount of $2,268.45 on 2/23/51. Auerbach, Pollak & Richardson
12/31/51
$650.00
Withdrawal from petitioner's savings account in the New Rochelle Federal Savings and Loan Association in the amount of $697.40 on 12/31/51. Bowery Savings Bank
Account No. 419269
1/20/49
$3,000.00
Check No. 706, drawn on J. W. Lerew & Co. account in the Central Hanover Bank and Trust Co. in the amount of $3,578.00 on 12/30/48 and cashed on the same day. Seamen's Bank for Savings
Account No. 790188
2/8/49
$2,340.91
Account No. 790189
2/8/49
$2,659.09
Check No. 717, drawn on J. W. Lerew & Co. account in the Central Hanover Bank and Trust Co. in the amount of $5,000.00 on 1/20/49 and cashed on the same day. This sum was divided so as to equate the balances in the two trust accounts. First National Bank of New Rochelle
6/23/49
$2,800.00 Sale of seven Lehigh Valley Railroad 4 1/2 percent 2003 consolidated mortgage bonds in the fall of 1948. 2/27/50
$500.00
5/ 1/50
400.50
Withdrawal from petitioner's savings *175 account in the New Rochelle Federal Savings and Loan Association in the amount of $900.00 on 12/21/49. 7/5/50
$950.00
7/5/50
500.00
Cash held in home. 8/ - /50
$100.00
Disability payment in this amount from New York Life Insurance Company. 9/20/50
$245.00
Disability payment and a deposit of a dividend reported on petitioner's tax return. 10/11/50
$100.00
Disability payment. 12/1/50
$1,000.00
Cash held in home. 1/11/51
$1,660.00
From war bonds purchased prior to 1949 and cashed on this date. The interest from these bonds had been reported on an annual basis. 1/11/51
$175.00
Dividend reported on petitioner's tax return. 1/26/51
$500.00
Withdrawal from Jr.'s account with Auerbach, Pollak & Richardson in the amount of $500.00 on 1/15/51. 1/26/51
$503.25
War bonds of Jr. purchased prior to 1949 that were cashed and deposited in petitioner's account. 4/6/51
$444.00
War bonds in the amount of $354.00 purchased prior to 1949 that were cashed and deposited and interest properly reported on petitioner's *176 tax returns in the amount of $90.00. 4/30/51
$248.19
Cash held at home in the amount of $200.00 and a refund for an unused airline ticket in the amount of $48.19. 6/26/51
$200.00
9/19/51
800.00
10/30/51
800.00
Cash held in home. 12/21/51
$517.18
Dividend and interest properly reported on tax returns and an insurance payment for a casualty loss due to storm damage. 12/31/51
$470.00
Cash of $340.00 held in home and a dividend properly reported on petitioner's tax return in the amount of $130.00. A hurricane and resulting flood in September 1938 filled petitioner's cellar, destroyed petitioner's records, and damaged the currency held at home. Petitioner hand-washed and cleaned the currency after the flood. An internal revenue agent identified by petitioner as being present while he was cleaning the money, was also present at the trial of the case but did not testify. The Treasury Department, Bureau of Engraving and Printing, sent a letter dated July 24, 1959 to petitioner's attorney at that time, which stated in part: We know of no test which would establish beyond question whether United States currency *177 notes have or have not been soaked in water. At the time of the trial, petitioner had in his possession $6,395.00 in Federal reserve notes, series 1928, and redeemable in gold, and $211.00 in National currency, series 1928 and 1929. Petitioner fully cooperated with the internal revenue agents in giving them access to his records, answering questions that were asked of him, and attempting to secure petitioner's tax returns for 1916 and 1917. Respondent determined the deficiencies by including in petitioner's income the bank deposits previously referred to. No part of any deficiency in income tax for the years 1949 through 1951 is due to fraud with intent to evade tax. Petitioner, without reasonable cause, failed to file declarations of estimated tax for 1949, 1950, and 1951. Opinion Respondent has utilized the "bank deposit" method of reconstructing income in determining the deficiency and in finding that petitioner filed false and fraudulent returns with intent to evade tax. Petitioner must prove respondent's determination of the deficiency to be incorrect, while respondent, of course, has the burden of establishing the fraud by clear and convincing evidence. Emanuel Hollman, *178 38 T.C. - (May 11, 1962). Willful evasion of tax may be inferred in situations in which the taxpayer has made "numerous and comparatively large deposits in a bank account, the sources and nature of which are not recorded or accounted for in any books of account." . "Concededly, proof of bank deposits, standing alone, does not establish the receipt of income. But many other circumstances may create the same inference." (C.A. 2, 1955), affirming a Memorandum Opinion of this Court. Bank deposits are less reliable than net worth but in them, (C.A. 8, 1935), certiorari denied , as in net worth cases, there is imposed a burden * * * upon the government to prove that increases in the taxpayer's net worth are attributable to currently taxable income. * * * [Such] burden can * * * be borne by providing evidence from which it could be inferred that either there exists a likely source of taxable income or that there do not exist any sources of nontaxable income. *179 (C.A. 1, 1958), reversing on other grounds a Memorandum Opinion of this Court. Aside from the bank deposits, respondent has offered no evidence of a "likely source" or any "other items of proof [of] * * * equal or greater probative value as circumstantial indication that the * * * available funds were taxable as income." (C.A. 3, 1955). As a result of his illness, petitioner's partnership, during the years in question, was producing little, if any, income, and petitioner has apparently fully reported his investment income. No other source, illicit or otherwise, has been shown by respondent, nor has any attempt been made to negative nontaxable sources. In addition, petitioner has attempted to explain each deposit and has offered records which, except in a few instances, could hardly be called inaccurate and incomplete. There certainly is no clear and convincing evidence of fraud. And, even if petitioner had made little or no effort to explain [the bank deposits], * * * this failure * * * does not make up the deficiency in the Commissioner's evidence to sustain the burden of proof of fraud placed upon him by statute. *180 The Commissioner's case is wholly inadequate unless the unexplained bank deposits are proof of fraud. He has failed to prove fraud * * * . Petitioner appeared to be a reliable and trustworthy witness. While some discrepancies were revealed, important aspects of his explanations, difficult to credit as they would ordinarily be, were sufficiently corroborated so that we are willing to accept, as truthful, his testimony as a whole. As our findings of fact reflect, petitioner has established a nontaxable source for each of the deposits here in issue. The only additional evidence produced at the trial is the corroborating testimony of petitioner's other witnesses. Respondent has failed to come forward with any evidence to discredit this story. "Respondent's only explanation of such facts is that the evidence given in support thereof is unworthy of belief. * * * We cannot accede to such a proposition." . In fact, petitioner's credibility is supported by respondent's own agents. During an interview with the Intelligence Division of the Internal Revenue Service, the special agent for the Internal *181 Revenue Service stated: "Mr. Lerew, at this time I would like to say this, your answers have been, as far as I can see, very forthright and clear." Finally, the "Gold Clause" Federal reserve notes and National currency produced at the trial are further support for petitioner. While the parties agree that this money is still in general circulation, it is not now being issued [1] and it is reasonable to assume that any substantial recent accumulation of this type of currency would be difficult. Respondent was unsuccessful in his attempt to discredit this portion of petitioner's testimony, and the failure to call as a witness the internal revenue agent who is said to have observed petitioner cleaning his damaged store of currency and who was present in the courtroom adds further strength to petitioner's story. , affd., (C.A. 10, 1947).
For similar reasons we accept petitioner's statements as sufficient to sustain his burden of showing that there is no deficiency in tax. But precisely because we rely *182 on his assertions that the returns filed by him were accurate, we are unable to credit, without more, his claim of an unreported capital loss in 1948, which is advanced as the justification for a loss carry-forward to the instant years. There is no documentary evidence of any kind to corroborate his claim, and his own tax return casts doubt upon it. The claims of overpayment are denied. Finally, and notwithstanding the disposition of other issues, it is necessary to conclude that petitioner is liable for additions to tax under section 294(d)(1)(A) for failure to file declarations of estimated tax. Petitioner has made no argument on this point and we regard the issue as abandoned. But, in any event, no effort was made to show reasonable cause for failing to file and, as we said in : For 1949 and 1950, petitioners reported * * * income from sources other than wages (before any adjustments were made by respondent) * * *. Consequently, they were required, under section 58(a)(2) of the 1939 Code, to file declarations of estimated tax for those years since their gross income in each year from sources other than wages * * * could reasonably *183 have been expected to exceed $100 and their total gross income to be $600 or more. Petitioners have introduced no evidence showing reasonable cause for failure to file declarations for 1949 and 1950 and are, therefore, liable for the section 294(d)(1)(A) penalty. * * * In order to compute the additions to tax under section 294(d)(1)(A), Decision will be entered under Rule 50. Footnotes
1. See, e.g., H.J. Res. No. 377, 75th Cong., 1st Sess., 81 Cong. Rec. 4998 (1937).↩